UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID YWAIN YOUNG,

        Plaintiff,

Case No. 1:10-cv-1064

Hon. Robert J. Jonker

v.

UNKNOWN BAILEY, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action in which plaintiff has alleged that defendants used excessive force during the course of his arrest. This matter is now before the court on defendant Officer Bailey's motion for summary judgment (docket no. 41). Defendant's motion is unopposed.

**I.     Discussion**

Plaintiff's complaint names as defendants the Battle Creek Police Department and two of its officers, Bailey and Strunk. Compl. (docket no. 1). Plaintiff set forth his allegations in a single paragraph (in his words):

> On February 4, 2010 in the City of Battle Creek, I was violently assaulted by several police officers of the Battle Creek Police Dept. Subsequently arrested without warrant, probable cause or reasonable suspicion pursuant to an alleged traffic violation of failing to use my turn signals. These officers at the time in question were working under the jurisdiction of the City of Battle Creeks Police Departments "Gang Task Force Unit." Officer Bailey made the initial stop, requested only drivers license, placed license in his top pocket, ask me to step out of vehicle, called for back up, ask me to turn around, placed handcuffs on me, turned me around, ask me to open my mouth and at once violently grabbed me around the throat completely cutting of my air passage. I was held under this "choke" hold for a number of minutes while other officers violently assaulted me. Subsequently I was arrested and charged with three counts of resisting/assault/obstructing police officers. My complaint is the police officers used of "excessive force" causing physical harm and placing my life in imminent danger.

*Id.* at ¶ IV. Plaintiff seeks unspecified injunctive and declaratory relief, damages in the amount of $3,000,000.00, and requests the court to "sanction Battle Creek Police Dept. and ban unlawful choke holds against citizens." *Id.* at ¶ V. The court previously dismissed plaintiff's claims against Officer Strunk and the Battle Creek Police Department, leaving Officer Bailey as the sole remaining defendant. *See* Order approving and adopting report and recommendation (docket no. 21).

## II.    Defendant's motion for summary judgment

### A.    Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Defendants' motion is unopposed. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2nd Cir. 1996). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992).

**B. Discussion**

The use of excessive force by law enforcement officials in making an arrest may give rise to a claim under 42 U.S.C. § 1983 for violation of the Fourth Amendment. *See Bass v. Robinson*, 167 F.3d 1041, 1045 (6th Cir. 1999). "In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). "[I]f the plaintiff was a free person at the time of the incident and the use of force occurred in the course of an arrest or other seizure of the plaintiff, the plaintiff's claim is governed by the Fourth Amendment's reasonableness standard." *Aldini v. Johnson*, 609 F.3d 858, 865 (6th Cir. 2010). *See Gaddis ex rel. Gaddis v. Redford Township*, 364 F.3d 763, 772 (6th Cir. 2004) (citing *Graham*) ("[t]he sole constitutional standard for evaluating excessive force claims is the Fourth Amendment's criterion of reasonableness").

Whether an officer has used excessive force in effecting an arrest depends on whether the officer's conduct is "objectively reasonable" in light of the facts and circumstances surrounding the arrest. *See Graham*, 490 U.S. at 396-397. "Courts must apply an objective standard, looking to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect pose[d] an immediate threat to the safety of the officers or others, and [3] whether he was actively resisting arrest or attempting to evade arrest by flight." *Gaddis*, 364 F.3d at 772 (citing *Graham*) (internal quotation marks omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. Whether a particular use of

force was reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. The extent of the injury is not a crucial factor in determining an excessive force claim under the Fourth Amendment. *See Bass*, 167 F.3d at 1046 n. 1 ("[a] factor that is not crucial to an analysis of a claim for excessive force in violation of the Fourth Amendment is the extent of the injury inflicted").

Defendant's brief in support of his motion for summary judgment sets forth a comprehensive statement of facts, which is supported by over 80 pages of trial testimony, admissions, affidavits and government records.[1] Plaintiff has failed to file a response to the motion and defendant's statement of facts is uncontested. Rather than preparing a separate chronology of the relevant events, the court will rely on defendant's statement of facts, which is set forth below.

> The uncontroverted facts are as follows: On 02/04/2010, BCPD Officer, Defendant James Bailey, was working in the Gang Suppression Unit (GSU), a group of six officers that targets gang activity. (Ex. P, People v. David Ywain Young, Calhoun County 37th Circuit Court Case #2010-1363-FH, Trial Transcript Bailey's testimony, p. 61:16-22; p. 62:11-14 [verified by Ex. Q]) Bailey was in a marked patrol car, wearing a police uniform. (Ex. P, p. 62:15-19) Officer Bailey and the other members of the GSU were working drug interdiction on a known drug house located at 93 Somerset. (Ex. P, pp. 62:25, 63:1-5). Another member of the GSU told Officer Bailey that an informant had advised that crack cocaine was being sold at 93 Somerset. (Ex. P, p. 63:5-11) A white Ford Pickup had been seen there for just a couple of minutes and then it left. (Ex. P, p. 63:9-13) Officer Bailey knows, through drug interdiction training and experience, that subjects will often stay at locations

---

[1] Defendant relies, in part, on his requests for admissions submitted to plaintiff pursuant to Fed. Rules Civ. Proc. 36. *See* Certificate of mailing (docket no. 39); Requests for admissions (docket no. 42-5). There is no evidence that plaintiff responded to the requests for admission within 30 days after being served. Rule 36(a)(3) ("[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party of its attorney"). Because plaintiff failed to respond to the requests for admission, the court agrees with defendant that the requests are deemed admitted. *See generally*, *United States v. Petroff-Kline*, 557 F.3d 285, 293 (6th Cir. 2009) (Rule 36(a)(3) "is essentially intended to facilitate proof at trials obviating the need to adduce testimony or documents as to matters that are really not in controversy"). In this regard, even if plaintiff had contested some or all of the admissions relied upon by defendant, the court would reach the same result based upon the other evidence of record.

where they sell drugs only long enough to exchange drugs and money. (Ex. P, p. 63:21-25)  This was consistent with the behavior of the individual driving the white Ford Truck, providing officers reasonable suspicion that the driver of this truck was purchasing crack cocaine. (Ex. P, p. 64:1-3)

Based on the description of truck and information from members of the GSU, Officer Bailey spotted the truck, got behind it and followed it to a stop sign.  Up to this point, Officer Bailey had not noted any violations of the Motor Vehicle Code (MVC).  (Ex. P, p. 64:12-21)  With Officer Bailey directly behind this truck, the driver made a left hand turn onto Limit Street without using a turn signal, in violation of MCL 257.648 .  (Ex. P, p. 64:24-25, p. 65:1)  When the driver made a second turn, a right onto VanBuren, again without using a turn signal in violation of MCL 257.648, Bailey activated lights to effectuate a traffic stop.  (Ex. P, p. 65:7-13)

At approximately 6:55 PM, Officer Bailey stopped the white Ford Truck he had been following for violation of MCL 257.648. (Ex. P, p. 65:22-25, Admissions #1 & #2)  Plaintiff was driving the truck.  (Ex. P, p. 66:4-13)  Officer Bailey told Plaintiff he stopped him because he had not used his turn signal on the previous two turns.  (Admission #2)  Plaintiff replied, "Sorry about that."  (Ex. P, p. 93:1-7)

Officer Bailey then requested Plaintiff to provide him his driver's license, but he instead handed him a KCC [college] identification card.  (Ex. P, p. 66:15-19) The picture identification card confirmed his identify as David Young.  (Ex. P, p. 66:20-21)   Plaintiff admitted to Officer Bailey that his driver's license was suspended.  (Ex. P, p. 66:16-17, Admission #4)  Other members of the GSU then appeared as backup for the traffic stop, including Ryan Strunk. (Ex. P, p. 67:6-11) When Plaintiff responded to Officer Bailey before he was handcuffed, Plaintiff's speech was not clear.  (Admission #3)  Plaintiff appeared nervous, and was also mumbling. (Ex. P, p. 67:24-25)  Plaintiff was speaking in a way where he wasn't moving his tongue. (Ex. P, p. 68:7-9)

Officer Bailey's training and experience with drug interdiction has shown him that subjects who've purchased drugs will often put drugs in their mouths to conceal it, and when confronted by police, will often attempt to swallow the drugs.  (Ex. P, p. 68:18-24)  His training and experience also shows that these individuals will try to conceal the drugs in their mouth unless confronted and feel they must swallow it.  (Ex. P, p. 69:13-18)  Officer Bailey advised Plaintiff that he was under arrest for driving while his license was suspended, a misdemeanor pursuant to MCL 257.904, and handcuffed him.  (Admission #5; Ex. P, p. 67:22-24)

Because Plaintiff had just been seen leaving a drug house where GSU had information that crack cocaine was being sold, because of Plaintiff's nervous behavior, and mumbled speech, Officer Bailey believed Plaintiff had purchased crack cocaine and that it was in his mouth. (Ex. P, p. 69:20-25, 70:1)  Officer Strunk

6

by this time had come to the side of the truck while Bailey was handcuffing Plaintiff. Strunk asked Plaintiff his name. (Ex. P, p. 70:17-23) As Plaintiff said his name was "David Young," Officer Bailey could clearly see Plaintiff kept his tongue pressed to the bottom of his mouth. (Ex. P, p. 70:21-25) In his experience as a drug interdiction officer, Officer Bailey has asked suspects to open their mouths on more than 100 occasions. When he has discovered they are concealing drugs in their mouths, the speech is consistent with Plaintiff's speech that evening. Bailey has seen this on a weekly basis in his work, sometimes several times in the same week. (Ex. P, p. 71:2-12) As Bailey finished handcuffing Plaintiff, Officer Strunk conveyed the message to Officer Bailey that he also believed Plaintiff had something in his mouth, furthering the suspicion Plaintiff had concealed drugs in his mouth. (Ex. P, p. 71:14-23) Between the time when he was initially stopped, through the time Officer Bailey arrested and placed handcuffs on him, Plaintiff was courteous and cooperative. (Admission #6)

After Officer Bailey placed handcuffs on Plaintiff, he told Plaintiff to face him and asked him to open his mouth. (Ex. P, p. 72:1-2, Admission #7) Instead of complying and opening his mouth, Plaintiff clenched his jaw shut and attempted to swallow. (Ex. P, p. 72:4-6, Admission #8) Plaintiff tucked his chin and stopped speaking, when previously he had been speaking and responding to questions. (Ex. P, p. 72:8-10) At this point, he was no longer being compliant with the things being requested of him by the officers. (Ex. P, p. 72:21-23) He was asked several times to open his mouth and spit out what was in it. (Ex. P, p. 72:24-25, p. 73:1-9, Admission #11) Defendant Bailey and the other officers were using clear, loud direction telling him to open his mouth and spit out. Plaintiff was given this direction more than twenty times during the entire incident. (Ex. P, p. 73:13-19) During this encounter while Plaintiff was handcuffed, Officer Bailey verbally warned Plaintiff of the dangers of swallowing cocaine. (Admission #9) Officer Bailey didn't know the quantity or the type of drugs that were likely in Plaintiff's mouth, and Bailey was therefore concerned it could be fatal. (Ex. P, p. 74:5-8) Officer Bailey has learned through training that swallowing crack cocaine can be fatal. (*Id.*)

Plaintiff continued to ignore the order to open his mouth and spit out, instead, keeping his jaw clenched tight with his chin down. So Officer Bailey put his hand underneath Plaintiff's Adam's apple and used pressure in an attempt to prevent Plaintiff from swallowing but not enough pressure to prevent him from breathing. (Ex. P, p. 74:15-25) Officer Bailey placed his right thumb to Plaintiff's right of his Adam's apple and his right hand fingers to Plaintiff's left of his Adam's apple and applied pressure. (Admission #10) While doing this, Officer Bailey again directed Plaintiff to spit out what was in his mouth. (Admission #11) Bailey's goal was to get Plaintiff to spit out whatever was in his mouth and prevent him from swallowing. (Ex. P, p. 75:1-2) Bailey knew that preventing Plaintiff from breathing would not help him accomplish his goal of getting Plaintiff to spit out what he was concealing in his mouth. (Ex. P, p. 75:2-3) While applying pressure to each side of Plaintiff's

Adam's apple, Officer Bailey stood to Plaintiff's right side and also placed his left hand on Plaintiff's back in an effort to force him to lean forward over the vehicle hood while directing him to spit out what he had in his mouth. (Admission #12) Bailey hoped the laws of gravity would assist Plaintiff in spitting out what was in his mouth. (Ex. P, p. 77:1-3) Defendant Bailey has used this technique successfully numerous times to get suspects to spit out drugs concealed in the mouth. (Ex. P, p. 77:4-7)

Instead of complying, Plaintiff began to violently thrash and pull back away. (Ex. P, p. 75:21-23; 79:1-3) According to the Jail booking records from this incident, Plaintiff was 6.3" tall and 190 pounds. (Exhibit "F.") Plaintiff was told to stop resisting by both officers. (Ex. P, p. 78:7-16) But while Officer Bailey applied pressure to Plaintiff's Adam's apple as detailed above, he continued to thrash his head and upper body. (Admission #16) Plaintiff kept his mouth clenched shut the entire time Officer Bailey had his hand on his neck, in spite of the direction to open his mouth. (Admission #15) During this time, Plaintiff also attempted to reach his left pocket with his handcuffed hand. (Admission #17) While Officer Bailey directed Plaintiff to open his mouth and spit out what he had in his mouth while applying pressure to the sides of his Adam's apple, he felt Plaintiff swallow. (Ex. P, p. 79:15-16) Immediately after Plaintiff swallowed, he opened his mouth and, with clear speech, stated that he had nothing in his mouth. (Ex. P, p. 79:18-21, Admission #20) Officer Bailey removed his hand from Plaintiff's neck as soon as he felt him swallow. (Admission #18) From the time that Plaintiff was stopped until he was bent over the car and swallowed, it was only minutes. (Ex. P, p. 112:1-10) Plaintiff then began to get verbally belligerent with Officer Bailey and the other officers. (Ex. P, p. 81:1-2)

Defendant Bailey has received training on a "choke hold," that would restrict an individual's airway, and he was not applying a "choke hold" in this instance. (Ex. P, p. 75:12-19) Officer James Bailey did not stand behind Plaintiff and did not wrap his arm around Plaintiff's neck. (Admission #13) Plaintiff never lost consciousness during this encounter with Bailey on 2/4/2010. (Admission #19) Throughout this encounter with Officer Bailey, Plaintiff remained on his feet until he was placed in Officer Bailey's vehicle. (Admission #14) Plaintiff did not "gag" or cry out to stop when Officer Bailey put his hand on Plaintiff's throat. (Ex. P, p. 122:16-22)

Because Officer Bailey was concerned that Plaintiff had swallowed drugs, he told him that he should go to the hospital and asked if he could take him there, asking three times. (Ex. P, p. 81:18-21, Admission #21) Plaintiff refused to allow Officer Bailey to take him to the hospital. (Admission #22) Bailey then transported Plaintiff to the Calhoun County Jail. (Ex. P, p. 83:11- 14) The travel time to the jail was approximately ten minutes. (Ex. P, p. 115:6-8) During this transport, Plaintiff, who was forty-nine, then clearly shouted to Officer Bailey that he had "fucked up this time" and that he was "going to call my mom." (Admissions #23, #24, and #25)

>According to Calhoun County Sheriff Department (CCSD) booking records, Officer Bailey arrived at the jail with Plaintiff at 7:08 p.m. on 02/04/2010. (Ex. G) During the book-in process at 8:49 p.m., CCSD Correction's Officer Merry Christine Tobias noted the following relevant items during her visual medical screening:
>
>>[1]   Plaintiff was conscious; he had no obvious pain or bleeding; he had no visible signs or trauma; there were no symptoms suggesting emergency service;
>>
>>[2]   Plaintiff appeared to be under the influence of barbiturates, heroin or other drugs.
>>
>>[3]   Plaintiff refused medical treatment at Book-in.  (Ex. H)
>
>Plaintiff's February 4, 2010 "mugshot" was taken at 21:10:16 (9:10 p.m.) at the conclusion of the booking process. (Ex. I) (Ex. I contains 6 mugshots of Plaintiff representing his 6 bookings at this facility from 08/02/2007 through 08/23/2010. See Ex. G)
>
>From the time Plaintiff was booked into the Jail on 2/4/2010 for the offense that is the subject of this lawsuit, he remained continuously lodged until he bonded out on 2/11/2010. (Admission #27) Plaintiff received no medical treatment while he was lodged in the Jail beginning on 2/4/2010 and ending when he was released on 2/11/2010. (Admission #28)

Defendant's Brief at pp. 4-10.

Plaintiff was subsequently charged with three felony counts for assaulting / resisting / obstructing a police officer brought pursuant to M.C.L. § 750.81(d)(1). Under this statue, "an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both." *See People v. David Ywain Young* (Felony Information) (April 27, 2010) (docket no. 43-5). Plaintiff was convicted of on two counts of violating M.C.L. § 750.81(d)(1), with respect to Officers Bailey

and Strunk. *See People v. David Ywain Young*, No. 2010-1363-FH, 37th Cir. Ct. (Judgment of sentence) (Aug. 24, 2010) (docket no. 44-1).[2]

Viewing the uncontested facts in the light most favorable to non-moving party (plaintiff), the court concludes that there was no Fourth Amendment violation in this case. Officer's Bailey's actions did not rise to the level of excessive force. Rather, his actions were reasonable under the circumstances. To use the Supreme Court's formulation the circumstances following the traffic stop were "tense, uncertain, and rapidly evolving." *See Graham*, 490 U.S. at 396-97. Although plaintiff was initially stopped for a traffic infraction, he was ultimately arrested for a misdemeanor of driving while his license was suspended. Plaintiff escalated the situation by swallowing an unknown substance (suspected to be cocaine) which posed an immediate threat to himself. In addition, plaintiff was resisting the officers, by struggling with Officer Bailey and refusing to follow lawful commands to spit out the contents of his mouth (criminal conduct for which he was later convicted). Under these circumstances, Officer Bailey did not apply excessive force. *Id.* at 394-97; *Gaddis*, 364 F.3d at 772.

---

[2] The court previously noted that under *Heck v. Humphrey*, 512 U.S. 477 (1994), plaintiff's § 1983 claim of excessive force against Officer Bailey could be barred due to plaintiff's conviction under M.C.L. § 750.81d(1). The court further noted that the Sixth Circuit has held in several instances that a violation of M.C.L. § 750.81d(1) did not bar an excessive force claim (*see, e.g.*, *Karttunen v. Clark*, 369 Fed. Appx. 705, 707-09 (6th Cir. 2010); *Miller v. Village of Pinckney*, 365 Fed. Appx. 652, 654-55 (6th Cir. 2010); *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010)), and that resolving this case under the *Heck* bar would be a fast intensive issue. *See* Report and Recommendation at p. 8, n. 1 (docket no. 17). However, because plaintiff has failed to establish a Fourth Amendment violation, it is unnecessary for the court to address whether *Heck* bars his claim with respect to plaintiff's conviction under M.C.L. § 750.81d(1).

**III.     Recommendation**

For these reasons, I respectfully recommend that Officer Bailey's motion for summary judgment (docket no. 41) be **GRANTED** and that this action be dismissed.


Dated:  August 31, 2012                             /s/ Hugh W. Brenneman, Jr.
                                                    HUGH W. BRENNEMAN, JR.
                                                    United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).